**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**BRIAN CAMPBELL and**
**SUSAN CAMPBELL,**

                              Plaintiff,

**vs.**                                        CASE NO. _____

**CAPITAL LINK MANAGEMENT, LLC**
**and DENISA PICCIONE and**
**JONATHAN D. RINKER,**

                              Defendants.
_____/

**COMPLAINT**
**JURY DEMAND**

**INTRODUCTION**

1.      Plaintiffs allege violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA"), the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq*. ("FCCPA"), and the Telephone Consumer Protection Act, 42 U.S.C. § 227 et seq. ("TCPA").

2.      Defendants extorted money from Plaintiffs by pretending to have hired a county processor to serve Plaintiff BRIAN CAMPBELL a fake lawsuit at his residence or at his place of employment if he did not call and make a payment to Defendant CAPITAL LINK MANAGEMENT.

3.     The general purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). Likewise, the FCCPA has been described by the Florida Supreme Court as "a laudable legislative attempt to curb what the Legislature evidently found to be a series of abuses in the area of debtor-creditor relations." Harris v. Beneficial Finance Co., 338 So. 2d 196, 200–201 (Fla. 1976).

4.     The use of these unlawful debt collection practices by Defendants and other debt collectors is epidemic, as described in the numerous complaints filed over the past few years by the Federal Trade Commission, Consumer Financial Protection Bureau, and various attorney generals across the country. These schemes are popular because they are extremely profitable.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 1337, 1367 and 15 U.S.C. § 1692k.  Venue in this District is proper because Plaintiff resides here and Defendant placed telephone calls into this District.

## PARTIES

7.     Plaintiff, BRIAN CAMPBELL ("MR. CAMPBELL") is a natural person and a citizen of the State of Florida, residing in Pinellas County in the Middle District of Florida.

8.     Plaintiff, SUSAN CAMPBELL ("MRS. CAMPBELL") is a natural person and a citizen of the State of Florida, residing in Pinellas County in the Middle District of Florida. SUSAN and BRIAN are married.

9.      Defendant, CAPITAL LINK MANAGEMENT, LLC "(CLM") is a limited liability company organized and existing under the laws of the State of New York also doing business from 455 Commerce Dr., Suite 7, Amherst, NY 14228. CLM regularly transacts business in the Middle District of Florida, and is a "debt collector" as that terms is defined by 15 U.S.C. § 1692a(6) and Fla. Stat. § 559.55(7).

10.     Defendant, Jonathan D. Rinker ("RINKER") is a natural person residing in Buffalo, New York. RINKER personally, or through agents, regularly conducts business in the State of Florida including the Middle District of Florida. Upon information and belief, RINKER is the owner, operator, and / or manager of CLM, and is a "debt collector" as that terms is defined by 15 U.S.C. § 1692a(6) and Fla. Stat. § 559.55(7).

11.     Defendant, Denisa Piccione ("PICCIONE") is a natural person residing in Buffalo, New York. PICCIONE personally, or through agents, regularly conducts business in the State of Florida including the Middle District of Florida. PICCIONE actively participates in the collection of debts for CLM, and upon information and belief, PICCIONE is the owner, operator, and / or manager of CLM. PICCIONE is a "debt collector" as that terms is defined by 15 U.S.C. § 1692a(6) and Fla. Stat. § 559.55(7).

12.     Any reference hereinafter to "Defendants" without further qualification is meant to refer to each and all Defendants herein jointly and severally.

## FACTUAL ALLEGATIONS

13.     Defendants sought to collect from Plaintiffs an alleged debt arising from a transaction in which the money, property, insurance, or services that are the subject of the transaction were incurred primarily for personal, family, or household purposes.

Specifically, at all times material herein, it was alleged by Defendants that MR. CAMPBELL owed $1300 for a payday loan taken out with Laser Lending.

14.     MR. CAMPBELL never took out a payday loan with "Laser Lending."

15.     MR. CAMPBELL has never taken out a payday loan with any company.

16.     On or about August 8, 2017, the CAMPBELL's began receiving prerecorded messages from CLM on their cellular telephones.

17.     MR. CAMPBELL received the following prerecorded voicemail from telephone number 239-309-0665:

> August 8, 2017 at 10:41 AM
> This message is solely for [Campbell, Brian].If this is not [Campbell, Brian], please hang up now. I am calling from Chaplain Financial. The reason for this call is that our office is in the process of requesting you to be served by your county processor at your home or your place of employment due to a civil suit that has been filed with our company. In order for this process to be stopped you must contact at our office immediately at [706-389-5892] and reference case number [1070991]. If you fail to respond to this message, once contacted by the county processor you will be required to have two forms of identification and sign documents. And if you are served at your place of employment and are not present your supervisor or human resource person will be required to sign for you and deliver the summons to you personally. [Campbell, Brian] you have been officially notified.

18.     MR. CAMPBELL was alarmed when he listened to the voicemail message described above in paragraph 20 and on August 8, 2017 he called 706-389-5892 as directed in the voicemail message. (As explained below, 706-389-5892 belongs to CLM not "Chaplain Financial.")

19.     When MR. CAMPBELL called 706-389-5892 he was told the call was about a payday loan he allegedly took out with Laser Lending. When MR. CAMPBELL

said he had never taken out a payday loan and asked for more information the representatives became hostile, refused to give any further information, and eventually hung up on MR. CAMPBELL.

20.     MR. CAMPBELL called back and was eventually connected to PICCIONE. PICCIONE told MR. CAMPBELL he owed $1,300 for the payday loan. MR. CAMPBELL told PICCIONE he had never taken out a payday loan, but PICCIONE insisted that if he did not pay the processor was coming to his house or work to serve the lawsuit. When MR. CAMPBELL continued to refuse to pay, PICCIONE stated she would knock the debt down to $650 with half due immediately and the other half to be paid later. Believing it would be cheaper to pay $650 then go to court and hire a lawyer; The CAMPBELLs used MRS. CAMPBELL's debit card to make a payment of $325 plus a $10 processing fee.

21.     MR. CAMPBELL received a receipt for his payment which is attached hereto as **Exhibit A**.

22.     Exhibit A was emailed from Defendant, DENISA PICCIONE.

23.     Exhibit A lists the merchant as "CAPITAL LINK MANAGEMENT LLC."

24.     On August 9, 2017, MRS. CAMPBELL looked "CAPITAL LINK MANAGEMENT LLC" up online and called the telephone number on the company's website, 844-339-4990, in order to get more information about the alleged debt. The representative who answered MRS. CAMPBELL's call stated that PICCIONE was the

owner of the company and stated he would have PICCIONE call MRS. CAMPBELL back.

25.      PICCIONE called MRS. CAMPBELL back, refused to give any more information, yelled at MRS. CAMPBELL, and told MRS. CAMPBELL she would have to deal with the "authorities" if she cancelled the payment that MRS. CAMPBELL had made the night before.

26.      MRS. CAMPBELL received the following prerecorded messages from telephone number 706-389-5892 to her cellular telephone:

> August 10, 2017 at 11:57 AM
> [Campbell, Brian] please hang up now. I am calling from Chaplain Financial. The reason for this call is that our office is in the process of requesting you to be served by your county processor at your home or your place of employment due to a civil suit that has been filed with our company.  In order for this process to be stopped you must contact our off immediately at [706-389-5892] and reference case number [1070991]. If you would like to speak with one of our mediators immediately, please press 0 now. If you fail to respond to this message once contacted by the county processor you will be required to have two forms of identification and sign documents. And if you are served at your place of employment, and are not present, your Supervisor or Human Resource person will be required to sign for you and deliver the summons to you personally. [Campbell, Brian] you have been officially notified.

> August 14, 2017 at 12:02 PM
> [Hot] Please hang up now. I am calling from Chaplain Financial. The reason for this call is that our office is in the process of requesting you to be served by your county processor at your home or your place of employment due to a civil suit that has been filed with our company.  In order for this process to be stopped you must contact our office immediately at [706-389-5892] and reference case number [1070990]. If you fail to respond to this message once

contacted by the county processor you will be required to have two forms of identification and sign documents. And if you are served at your place of employment, and are not present, your Supervisor or Human Resource person will be required to sign for you and deliver the summons to you personally. [Campbell, Hot] you have been officially notified.

### ***The Voicemail Messages are False and Deceptive***

27.     Both the FDCPA and the FCCPA prohibit debt collectors from making false threats and representations:

<u>15 U.S.C. § 1692e</u> –

"A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

. . .

(2) The false representation of --

(A) the character, amount, or legal status of any debt; or

(B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.
. . .

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
. . .

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

. . .

<u>Fla. Stat. § 559.72</u> –

In collecting consumer debts, no person shall: . . .

(9)   Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist.

. . .

28.     Each of the voicemail messages described above state the message is "from Chaplain Financial" and states that Chaplain Financial's telephone number is 706-389-5892.

29.     Telephone number 706-389-5892 actually belongs to CLM.

30.     Upon information and belief, CLM hired an outside agency "Chaplain Financial" to leave the threatening voicemail messages on its behalf in order to coerce the CAMPBELLs into calling CLM and extorting payment from them.

31.     Alternatively, CLM placed left the voicemail messages itself and gave a false name in an attempt to hide its true identity from consumers such as the CAMPBELLs.

32.     The voicemail messages falsely state that a lawsuit has been filed and that a process server will serve MR. CAMPBELL with a summons if he does not contact CLM.

33.     When MR. CAMPBELL returned the telephone messages and spoke to PICCIONE at CLM, PICCIONE told MR. CAMPBELL that if he did not pay the processor was coming to his house or work to serve the lawsuit.

34.     At the time of the voicemail messages, no lawsuit has been filed against Plaintiff with regards to the alleged debt.

35.     At the time of the voicemail messages, CLM was not in the process of requesting a county processor to serve MR. CAMPBELL with a summons.

36.     The debt was not paid and no lawsuit was filed against MR. CAMPBELL and no processor came to his home or place of employment.

37.     CLM never had any intention of filing a lawsuit against MR. CAMPBELL.

38.     CLM never had any intention of requesting a county processor to serve MR. CAMPBELL with a summons.

39.     CLM never had the legal right to file a lawsuit against Plaintiff.

40.     Section 559.553 of the FCCPA requires all consumer collection agencies to first register with the Florida Office of Financial Regulation before attempting to collect a debt.

41.     Section 559.785 of the FCCPA makes it a misdemeanor for "any person not exempt from registering to engage in collecting consumer debts in this state without first registering."

42.     CLM was attempting to collect a debt from Plaintiff and was required to register with the Florida Office of Financial Regulation.

43.     At the time CLM contacted Plaintiffs, CLM was not registered with the Florida Office of Financial Regulation as a consumer collection agency.

44.     CLM could not legally sue Plaintiff to collect the debt without first registering with the Florida Office of Financial Regulation.  *See* LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1197-1198 (11th Cir. Fla. 2010).

45.     Upon information and belief, even if CLM was licensed and Plaintiff actually owed the alleged debt, CLM could not sue Plaintiff to collect the alleged debt

because it would be void as either an unauthorized deferred presentment transactions under Florida Statute section 560.125(1) or an unauthorized consumer finance loan with an interest rate above 18 percent per annum under Florida Statute section 516.02(c).

46.     CLM has never filed a lawsuit against a consumer in the State of Florida.

47.     CLM knows it does not have the legal right to sue consumers in the State of Florida.

48.     CLM falsely represented the legal status or character of the alleged debt.

49.     CLM falsely represented the services rendered by it.

50.     CLM's actions were willful.

### The Voicemails Fail to Give Required Disclosures

51.     Section 1692e(11) of the FDCPA requires debt collectors to disclose in the initial communication that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose.

52.     Section 1692e(11) of the FDCPA also requires debt collectors to disclose in subsequent communications that the communication is from a debt collector.

53.     Section 1692d(6) prohibits the placement of telephone calls without meaningful disclosure of the caller's identity.

54.     CLM did not disclose in the voicemail messages or return telephone call that it was a debt collector.

55.     CLM did not disclose its real name in the voicemail messages.

56.     CLM knows the FDCPA requires debt collector to disclose its name and that it is a debt collector in telephone messages.

57.     That CLM utilizes pre-recorded telephone messages that do not disclose they are debt collector when Defendant knows it must disclose it is a debt collector evidences that Defendant intentionally violates the FDCPA

58.     In enacting the FDCPA, Congress plainly sought to curb harassment or abuse at the hands of debt collectors, elevating this to the status of a legally cognizable injury and identified the private legal right of consumers to be entitled to receive the disclosures that Congress, in its judgment, included in 15 U.S.C. § 1692e(11)and 15 U.S.C. § 1692d(6) in communications from debt collectors.

59.     CLM's failure to provide the disclosures required by the FDCPA deprived Plaintiffs and other consumers of information regarding a private legal right that Congress specifically identified they should have, and created a substantial risk that the consumers would not be able to exercise their rights under the FDCPA.

60.     Specifically, the effect of CLM's failure to disclose that they are debt collectors in the communications is that it created a substantial risk that the consumers will not know that the rights bestowed by the FDCPA apply to them since the FDCPA only applies to debt collectors and that consumers would not know that their right to dispute the debt.

## LIABILITY

### *Respondeat Superior Liability*

61.     The acts and omissions of the debt collectors employed as agents by CLM who communicated with Plaintiff as described above were committed within the time and space limits of their agency relationship with their principal, CLM.

62.     The acts and omissions by the debt collectors were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by CLM in collecting consumer debts.

63.     By committing these acts and omissions against Plaintiff, the debt collectors were motivated to benefit their principal, CLM.

64.     CLM is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by its collection employees, including but not limited to violations of the FDCPA, FCCPA, and TCPA in their attempts to collect this debt from the CAMPBELLs.

### *Vicarious Liability of CLM for Calls Placed by "Chaplain Financial"*

65.     If the voicemails messages were left by "Chaplain Financial" on behalf of CLM, by virtue of its status as a debt collector CLM is vicariously liable to Plaintiffs for "Chaplain Financials" violations of the FDCPA and FCCPA in calls placed on CLM's behalf. *See Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 405 (3d Cir. Pa. 2000); *McCorriston v. L.W.T., Inc.*, 2008 U.S. Dist. LEXIS 60006, 11-12 (M.D. Fla. Aug. 7, 2008); *Schutz v. Arrow Fin. Servs., LLC*, 465 F. Supp. 2d 872, 876 (N.D. Ill. 2006).

66.     If the voicemails messages were left by "Chaplain Financial" on behalf of CLM, CLM is jointly and severally liable to Plaintiff with respect to the alleged violations of the TCPA. The Federal Communications Commission has held: "Similarly, a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." FCC, IN THE MATTER OF RULES AND REGULATIONS IMPLEMENTING THE TELEPHONE CONSUMER PROTECTION ACT OF 1991: REQUEST OF ACA

INTERNATIONAL FOR CLARIFICATION AND DECLARATORY RULING, 07-232, ¶10, (2007), ("FCCRUL. 07-232").

### *Liability of Individual Defendants*

67.     As a "debt collector" that controlled and directed the collection practices alleged here to have violated the FDCPA and FCCPA, RINKER is liable for the violations of CLM in his individual capacity. *See Schmidt v. Synergetic Communications, Inc.*, 2015 U.S. Dist. LEXIS 6209 (M.D. Fla. Jan. 20, 2015).

68.     As a "debt collector" that participated in the collection practices alleged herein to have violated the FDCPA and FCCPA, PICCIONE is liable for the violations she participated in or committed in her individual capacity.

69.     As a "debt collector" that controlled and directed the collection practices alleged here to have violated the FDCPA and FCCPA, PICCIONE is liable for the violations of CLM in his individual capacity. *See Schmidt v. Synergetic Communications, Inc.*, 2015 U.S. Dist. LEXIS 6209 (M.D. Fla. Jan. 20, 2015).

70.     PICCIONE is liable in her individual capacity for the violations she committed or participated in. PICCIONE is also liable as a "debt collector" that controlled and directed the collection practices of CLM, PICCIONE is liable in her individual capacity for the CLM's alleged violations of CLM in his individual capacity. *See Schmidt v. Synergetic Communications, Inc.*, 2015 U.S. Dist. LEXIS 6209 (M.D. Fla. Jan. 20, 2015)

71.     Pursuant to 47 U.S.C. § 217, an officer, agent or employee may be held liable for violation of the TCPA:

> [T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case also be deemed to be the act, omission, or failure of such carrier or user as well as that person.

72.     As the owners, officers, and directors of CLM, RINKER and PICCIONE established the policies of and practices complained of herein. As the officers that established and carried out the practices of CLM regarding the TCPA or authorized those policies and practices complained of herein, RINKER and PICCIONE are liable for the violations of their company in their individual capacity.

73.     Any reference hereinafter to "Defendant" or "Defendants" without further qualification is meant to refer to each and all Defendants herein jointly and severally.

## COUNT I
## VIOLATIONS OF THE FDCPA

74.     Plaintiff incorporates paragraphs 1 through 73 above as if fully set forth herein.

75.     Defendants violated 15 U.S.C. § 1692d(6) by failing to give meaningful disclosure of their identity in the telephone calls.

76.     Defendants violated 15 U.S.C. § 1692e(2) by falsely representing the character, amount, or legal status of any debt; or any services rendered by it.

77.     Defendants violated 15 U.S.C. § 1692e(5) by threatening to take any action that cannot legally be taken or that is not intended to be taken.

78.     Defendants violated 15 U.S.C. § 1692e(10) by using any false or deceptive means to collect or attempt to collect any debt or to obtain information about a consumer.

79.     ORG violated 15 U.S.C. § 1692e(11) by failing to disclose in the initial communication that the debt collector is attempting to collect a debt and any information will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector.

80.     ORG violated 15 U.S.C. § 1692f(1) by collecting amounts not permitted by law.

**WHEREFORE**, Plaintiffs requests that the Court enter judgment in favor of Plaintiffs and against Defendants for:

a.      Statutory damages;

b.      Attorney's fees, litigation expenses and costs of suit; and

c.      Such other or further relief as the Court deems proper.

## COUNT II
## VIOLATIONS OF THE FCCPA

81.     Plaintiffs incorporate paragraphs 1 through 73 above as if fully set forth herein.

82.     Defendants violated Fla. Stat. § 559.72(7) by engaging in conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family.

83.     Defendants violated Fla. Stat. § 559.72(9) by claiming, attempting, or threatening to enforce the debt when Defendant knew the debt was not legitimate.

84.     Defendants violated Fla. Stat. § 559.72(18) by communicating directly with the debtor when Defendant knows the Plaintiff is represented by an attorney with respect to the alleged debt.

85.     Pursuant to Fla. Stat. § 559.77(2), Plaintiffs are entitled to statutory damages sustained as a result of Defendant's failure to comply with Fla. Stat. §§ 559.72(5), (6), (7) and (9).

**WHEREFORE**, Plaintiffs requests that the Court enter judgment in favor of Plaintiffs and against Defendants for:

      a.      Statutory damages;

      b.      Attorney's fees, litigation expenses and costs of suit; and

      c.      Such other or further relief as the Court deems proper.

## COUNT III
## VIOLATIONS OF THE TCPA

86.     Plaintiff incorporates Paragraphs 1 through 73 above as if fully set forth herein.

87.     Defendants placed non-emergency telephone calls to Plaintiffs' cellular telephone using an automatic telephone dialing system or pre-recorded or artificial voice in violation of 47 U.S.C. § 227 (b)(1)(A)(iii).

**WHEREFORE**, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and against Defendants for:

      a.  Damages;

      b.  A declaration that Defendant's debt collection practices violate the TCPA;

      c.  A permanent injunction prohibiting Defendant from placing non-emergency calls to the cellular telephone of Plaintiff using an

automatic telephone dialing system or pre-recorded or artificial voice

of the called party; and engaging in the complained of practices; and

d.   Such other or further relief as the Court deems proper.

## **JURY DEMAND**

Plaintiff demands trial by jury.

*/s/ Kimberly H. Wochholz*
[ X ] Kimberly H. Wochholz – Trial Counsel
Fla. Bar No. 0092159
[    ] James S. Giardina
Fla. Bar No. 0942421
**The Consumer Rights Law Group, PLLC**
3104 W. Waters Avenue, Suite 200
Tampa, Florida 33614-2877
Tel: (813) 435-5055 ext 101
Fax: (866) 535-7199
James@ConsumerRightsLawGroup.com
Kim@ConsumerRightsLawGroup.com
***Counsel for Plaintiff***